UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                          )
LISA BROWN,               )
                          )
          Plaintiff,      )
                          )
     v.                   )   Civil Action No. 04-19 (RWR)
                          )
JO ANNE B. BARNHART,      )
                          )
          Defendant.      )
_____ )
```

MEMORANDUM OPINION

Plaintiff Lisa Brown filed a complaint seeking to reverse the decision of the Social Security Administration ("SSA") denying her claims for Disability Insurance Benefits and Supplemental Security Income.  Brown moved for a judgment of reversal, arguing that the SSA's final administrative decision is not supported by substantial evidence and is erroneous as a matter of law.  The SSA filed a motion for judgment of affirmance in support of the administrative decision.  Because the agency's final administrative decision is supported by substantial evidence, the SSA's motion for judgment of affirmance will be granted and Brown's motion for judgment of reversal will be denied.

BACKGROUND

I.   FACTUAL BACKGROUND

Lisa Brown is a forty-one-year-old woman living in Washington, D.C. with her two minor children.  (Administrative

Record ("AR") at 24, 323, 328.)  She attended Howard University for two years, was later employed as a word processor for two years, and then was employed as a Postal Service mail distribution clerk until November 2000 when she was terminated. (AR at 95, 136, 323-25.)  Five months before her termination, on May 5, 2000, Brown injured her back when she slipped and fell while in a grocery store.  (AR at 328-29.)  After a trip to the emergency room, she was diagnosed with back strain.  (AR at 330.)

Brown's pain persisted, and she was examined by a chiropractor, Dr. Enid Cruise, on May 9, 2000.  (AR at 199-201, 331.)  Dr. Cruise determined that Brown had moderately restricted cervical motion, moderate tenderness in the paracervical region, sharp cervical aching, and marked parathoracic and paralumbar tenderness as well as discomfort and a limited range of motion in other areas in her extremities.[1]  Brown's sensation in her upper extremities, however, appeared to Dr. Cruise to be intact.  (AR at 200.)  Brown made a series of visits to Dr. Cruise through June 6, 2000 for treatment of her ailments.[2]  (AR at 201-37.)

---

[1]  Dr. Cruise's report reflects that she conducted several tests to evaluate Brown's range of motion and responses to certain movements.  (See AR at 199-201.)

[2]  Between May 9, 2000 and June 6, 2000, Brown visited Dr. Cruise for various treatments and evaluations approximately twenty-seven times.  Brown received manual traction and electronic stimulation as well as other treatments.  Throughout the period of treatment, Dr. Cruise noted progress in Brown's condition.  (See AR at 201-37.)

- 3 -

Dr. Cruise's final report stated that Brown had "reached maximum medical improvement."  (AR at 236.)

On August 16, 2000, Brown visited Dr. Ta'aat Maximous who performed an orthopaedic examination.  (AR at 148-49.) Dr. Maximous noted tenderness in Brown's back and discomfort in her range of motion, but he concluded that Brown did not "have any physical disabilities that [could] prevent her from active daily living activities."[3]  (AR at 149.)  Brown visited Dr. Michael Langelle for a Physical Residual Functional Capacity Assessment on September 8, 2000.  (AR at 162-66.)  Dr. Langelle stated in a report that Brown could lift fifty pounds occasionally and lift twenty-five pounds frequently.  (AR at 163.)  He also noted in his report that given normal breaks, Brown could stand or walk for a total of about six hours a day and sit for a total of about six hours during an eight-hour workday.  (AR at 163.)  However, Dr. Langelle did place limitations on Brown's exposure to vibration, and the frequency with which she stooped, balanced, and climbed stairs.  (AR at 164, 166.)

Before Brown's physical troubles stemming from her fall, she suffered miscarriages in 1995 and 1998 that caused her great

---

[3]  Dr. Maximous's report reads: "In my opinion, this patient does have any physical disabilities that can prevent her from active daily living activities."  (AR at 149.)  The SSA argues that Dr. Maximous simply omitted the word "not" from the statement.  (See SSA's Mem. Supp. Affirmance at 5.)  Brown does not argue the point.

- 4 -

emotional pain and stress.  (AR at 96.)  During that time, Brown
sought psychiatric consultations and was diagnosed with
adjustment disorder, anxiety, and depression in April of 1999.
(Id.)  On August 7, 2000, after Brown's fall, Dr. Giuseppe
Scarcella conducted a psychiatric evaluation of Brown and
determined that she was moderately anxious, angry, depressed and
frustrated with her work situation. (AR at 146-47.)  According to
Dr. Scarcella's report, however, Brown's primary concern during
her visit was her physical condition.  (Id.)  In fact,
Dr. Scarcella reported that Brown stated, "I see no need to see a
psychiatrist, I am more concerned about my back."  (AR at 147.)
Although Dr. Scarcella's diagnosis of Brown was "adjustment
disorder with anxiety," he concluded there was no evidence that
she was unable to maintain her concentration in a way that could
impair her work-related capacities.  (Id.)  On three separate
occasions in 2001, though, Brown sought psychiatric treatment and
was consistently diagnosed as suffering from anxiety and
depression.  (AR at 97.)

II.  PROCEDURAL HISTORY

Brown applied for Disability Insurance Benefits and
Supplemental Security Income on May 25, 2000.  (AR at 18, 101-03,
279-81.)  Her claims were initially denied and denied again upon
reconsideration.  (AR at 18, 32-36, 39-42.)  Brown then requested
a hearing before an administrative law judge.  (AR at 43.)

- 5 -

During the hearing, the judge asked a vocational expert whether someone with Brown's age, educational background, employment history, and work restrictions could perform any jobs that exist in the national economy.  (AR at 24.)  The expert testified that someone with Brown's limitations could work as a "housekeeping cleaner," an "office helper," or a "small product assembler." (AR at 352.)  The expert also testified that in the national economy, there were 150,000 "housekeeping cleaner" jobs, 87,000 "office helper" jobs, and 176,000 "small product assembler" jobs. (Id.)  Neither the judge nor the attorney for Brown inquired into any possible conflicts between the expert's testimony about job availability and Brown's work capacity on the one hand, and on the other, the data contained in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), a publication of the U.S. Department of Labor that contains descriptions of thousands of jobs that exist in the United States.  (AR at 351-59.)

The judge concluded, based on the expert's testimony, that Brown was "capable of making a successful adjustment to work that exists in significant numbers in the national economy," and therefore was not disabled.  (AR at 25.)  Thus, the judge denied Brown's claims for Disability Insurance Benefits and Supplemental Security Income.  (AR at 27.)  Brown requested review of the

- 6 -

judge's decision by the Appeals Council of the SSA, and that
request was denied.  (AR at 10-14.)

Brown filed this action seeking to reverse the decision of
the administrative law judge and moved for a judgment of
reversal.  The SSA moved for a judgment of affirmance.

<u>DISCUSSION</u>

I.   STANDARD OF REVIEW

A.   <u>Scope of review</u>

A district court's review of the SSA's findings of fact is
limited to whether those findings are supported by substantial
evidence.  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971); <u>Brown v. Bowen</u>, 794 F.2d 703, 705 (D.C. Cir.
1986); <u>Krishnan ex rel. Deviprasad v. Massanari</u>, 158 F. Supp. 2d
67, 70-71 (D.D.C. 2001).  Substantial evidence is "'such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion[,]'"  <u>Perales</u>, 402 U.S. at 401 (quoting <u>Consolidated
Edison Company of New York v. National Labor Relations Board</u>, 305
U.S. 197, 229 (1938)); <u>Butler v. Barnhart</u>, 353 F.3d 992, 999
(D.C. Cir. 2004), and is "more than a mere scintilla of
evidence," but "something less than a preponderance of the
evidence."  <u>Ware v. Barnhart</u>, 357 F. Supp. 2d 134, 138 (D.D.C.
2004) (quoting <u>Consol. Edison</u>, 305 U.S. at 229, and <u>FPL Energy
Me. Hydro LLC v. FERC</u>, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  In
making this determination, "the court must carefully scrutinize

the record, but may not reweigh the evidence and replace the
[SSA's] judgment regarding the weight of the evidence with its
own." <u>Brown v. Barnhart</u>, 370 F. Supp. 2d 286, 288 (D.D.C. 2005)
(internal quotation marks omitted) (quoting <u>Jackson v. Barnhart</u>,
271 F. Supp. 2d 30, 34 (D.D.C. 2002)).

    B.   <u>Legal framework for determining eligibility</u>

    In order for an individual to qualify for Disability
Insurance Benefits, she must (i) meet the insured status
requirements of the statute, (ii) be under age sixty-five, (iii)
file an application for benefits and (iv) have a "disability"
within the meaning of the statute.  42 U.S.C. §§ 416(i), 423.  An
individual is disabled if she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or has lasted or can be expected to last for a
continuous period of not less than 12 months."  § 416(i)(1)(A).
A claimant will not be considered disabled if she is able to
engage in "any other kind of substantial gainful work which
exists in the national economy."[4]  § 423(d)(2)(A).  An individual
will qualify for Supplemental Security Income payments if she is
a "disabled individual" and has income and resources below or

---

    [4] Substantial work activity is work that involves
significant physical or mental activities even if on a part time
basis, and gainful work activity is work done for pay or profit
whether or not a profit is realized.  20 C.F.R. § 404.1572.

equal to statutorily specified amounts.  42 U.S.C. §§ 1381a,
1382, 1382c.

    In order to determine whether a claimant is disabled, an
administrative law judge is required to perform a five-step
evaluation.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the
judge determines whether the claimant has been employed in
substantial gainful work since the onset of her impairment.  If
the claimant has performed substantial gainful work, her claim
will be denied.  If the claimant has not performed substantial
gainful work, the judge must determine at step two whether the
claimant's impairments are severe.  If the claimant's impairments
are not severe, the judge must deny the claim.  If the
impairments are severe, the judge at step three must compare the
claimant's impairments with those in the Listing of Impairments
promulgated by the SSA.  If a match exists, disability is
conclusively presumed.  If no match exists, the judge must
continue the evaluation.  At step four, the judge must determine
if the claimant retains any "residual functional capacity,"
namely, the ability to do any of her past gainful work.  If the
judge finds that the claimant can still perform her old job, the
claim will be denied.  Finally, if the claimant is unable to
perform her past work, the judge must determine at step five if
other gainful work exists in the national economy that the

- 9 -

claimant, notwithstanding her severe disability, could perform. 20 C.F.R. § 404.1560(c)(2).

The SSA bears the burden of showing that jobs the claimant could perform exist.  Id.  In making this determination, the judge may call a vocational expert to testify about the existence of potential employment opportunities.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (stating that "[a]s is normally the case, that conclusion was based in large measure on the testimony provided by the vocational expert").  Generally, the judge also consults the DOT in making this assessment.  See Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).  If an apparent conflict exists between the expert's testimony and the DOT concerning existing jobs which a claimant could perform, the judge "must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] . . . evidence to support a determination or decision about whether the claimant is disabled."  Social Security Ruling (SSR) 00-4p, Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 65 Fed. Reg. 75,759-01 (Dec. 4, 2000) ("SSR 00-4p").

II.  REVIEW OF THE COMMISSIONER'S DECISION

In support of her motion for reversal, Brown makes several arguments.  Brown contends that the SSA's final decision is not supported by substantial evidence because the

- 10 -

administrative law judge failed to show that any of the jobs the
expert listed match Brown's limitations.  (Brown's Resp. to Mot.
for Affirmance at 6.)  Specifically, Brown claims that no record
evidence shows that the different job names used by the
vocational expert and administrative law judge - - "housekeeping
cleaner" and "Housekeeper-Cleaner" respectively - - reflect the
same occupation as the occupation "Cleaner, Housekeeping" listed
in the DOT.  (Id.)  In addition, Brown argues that SSR 00-4p
requires the judge to identify possible conflicts and resolve
actual conflicts between the expert's testimony and the DOT
concerning job availability and a claimant's work capacity, and
that the judge's failure to do so renders the judge's reliance on
the expert's testimony improper.  (Brown's Mem. Supp. Reversal at
3-8.)  Lastly, Brown contends that the judge "applied an improper
standard in evaluating [her] subjective complaints."  (Brown's
Mem. Supp. Reversal at 8.)

     A.   Substantial evidence

     In this case, the administrative law judge determined at
step one that Brown had not performed substantial gainful work
since sustaining her injury in 2000.  (AR at 19.)  Next, the
judge concluded that Brown suffered from severe, medically
determinable impairments - - discogenic and degenerative
disorders of the back and anxiety related disorders.  (AR at 20.)
At step three, the judge closely compared Brown's ailments with
those in the Listing of Impairments and determined that no match

existed.  (AR at 20-21.)  At step four, the judge concluded that
Brown lacked the residual functional capacity to perform any of
her past work.  (AR at 24.)  Lastly, at step five, the judge
concluded that jobs existed in significant number within the
national economy that Brown was capable of performing.  (AR at
25.)  The judge's conclusion was based almost entirely on the
testimony of the vocational expert.  (Id.) ("Based on the
testimony of the vocational expert, the undersigned has concluded
that considering claimant's age, educational background, work
experience, and residual functional capacity, she is capable of
making a successful adjustment to work that exists in significant
numbers in the national economy.")[5]  At the hearing, the judge
did not inquire into any possible conflicts between the expert's
testimony and the DOT, nor did Brown's attorney.  (AR at 349-59.)
Because the judge found that Brown could find work, he denied her
claim.  Only the judge's conclusion at step five is in dispute
here.

One of the jobs mentioned by the vocational expert,
"housekeeping cleaner," - - referred to as "Housekeeper-Cleaner"

---

[5] An administrative law judge may base his decision on the
testimony of a vocational expert.  Prunty v. Barnhart, No. 6:04
CV 00038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (citing
Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)) ("Testimony of
a [vocational expert] constitutes substantial evidence for
purposes of judicial review where his opinion is based upon
consideration of all the evidence in the record and is in
response to proper hypothetical questions which fairly set out
all of claimant's impairments.").

- 12 -

by the judge - - is entirely consistent with the "Cleaner,

Housekeeping" entry in the DOT listed at 323.687-014.  A

"Cleaner, Housekeeping"

> [c]leans rooms and halls in commercial establishments,
> such as hotels, restaurants, clubs, beauty parlors, and
> dormitories, performing any combination of the following
> duties:  Sorts, counts, folds, marks, or carries linens.
> Makes beds.  Replenishes supplies, such as drinking
> glasses and writing supplies.  Checks wraps and renders
> personal assistance to patrons.  Moves furniture, hangs
> drapes, and rolls carpets.

DOT 323.687-014.  Importantly, this occupation meets all of the

limitations the judge found Brown possessed, and the expert

testified that 150,000 housekeeping cleaner positions exist in

the national economy and 1,000 exist in the local economy.  (See

id.; AR at 352.)  The existence of this number of jobs that Brown

is able to perform is sufficient to support the SSA's decision at

step five that these jobs exist in significant number in the

national economy.  See Jones v. Barnhart, 315 F.3d 974, 979 (8th

Cir. 2003) (holding 75,000 jobs nationwide sufficient); Weiler v.

Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (holding 32,000

jobs nationwide sufficient).

Brown's response that no evidence shows that the expert's

reference to "housekeeping cleaner" - - or the judge's reference

to it as "Housekeeper-Cleaner" - - refers to the DOT listing of

"Cleaner, Housekeeping" is unpersuasive.  Brown's capability

limitations, which were given to the expert by the judge, map

precisely to the job requirements of the DOT entry.  The SSA need

- 13 -

only show "such relevant evidence as a reasonable mind might
accept as adequate" to support its findings.  Perales, 402 U.S.
at 401 (internal quotation marks omitted).  The fact that the job
referred to by the expert possesses the identical limitations as
does the job listing in the DOT is sufficient to show by
substantial evidence they are the same.  See Holcom v. Barnhart,
79 Fed. Appx. 397, 399 (10th Cir. 2003) (unpublished) (finding
that the "check-casher" job referred to by the vocational expert
was the same as the "check cashier" entry in the DOT because
there was no conflict between the two, and rejecting the argument
that the expert was referring to "cashier-checker" and "cashier
II" jobs listed in DOT that conflicted with the claimant's
limitations).  Because one of the occupations listed by the
expert corresponds with Brown's limitations as the occupation is
listed in the DOT, and because that occupation exists in
significant numbers in the national economy, the SSA's decision
in reliance on the expert's testimony was based on substantial
evidence.

     B.   SSR 00-4p

     The language of SSR 00-4p reads in pertinent part:

          Occupational evidence provided by a [vocational
     expert] generally should be consistent with the
     occupational information supplied by the DOT.  When
     there is an apparent unresolved conflict between
     [vocational expert] evidence and the DOT, the
     adjudicator must elicit a reasonable explanation for
     the conflict before relying on the [vocational expert]
     evidence to support a determination or decision about

- 14 -

> whether the claimant is disabled.  At the hearing
> level, as part of the adjudicator's duty to fully
> develop the record, the adjudicator will inquire, on
> the record, as to whether or not there is such
> consistency.

Brown's argument that SSR 00-4p requires the judge to ask about possible conflicts between the vocational expert's testimony and the DOT is not without some support.  See Teverbaugh v. Comm'r, 258 F. Supp. 2d 702 (E.D. Mich. 2003); see also Steward v. Barnhart, 44 Fed. Appx. 151 (9th Cir. 2002) (unpublished). However, although the D.C. Circuit has not addressed this issue, there is substantial and persuasive authority that under SSR 00-4p, "the mere failure to ask such a question cannot by itself require remand."[6]  Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264, at *2 (D. Me. June 24, 2004); see Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004) (unpublished) (stating that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony

---

[6] Because of their facts, Teverbaugh and Steward are not necessarily to the contrary.  In Teverbaugh, the expert identified one job the plaintiff could perform as "assembler" without further description, a title for which the DOT carries over 100 listings, and another job with a strength listing exceeding that of which the claimant was capable.  Teverbaugh, 258 F. Supp. 2d at 704.  The court remanded the SSA's claim denial since the administrative law judge had failed to ask the expert whether there was any conflict between her testimony and the DOT, and, unlike here, there was no other way of determining whether the jobs identified were ones that the claimant could perform.  Id. at 706.  In Steward, the SSA's claim denial was reversed where, unlike here, all three jobs the expert testified the claimant could perform were in conflict with the DOT.  44 Fed. Appx. at 152.

of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error"); <u>Boone v. Barnhart</u>, 353 F.3d 203, 206 (3d Cir. 2003) (refusing to adopt a "general rule that an unexplained conflict between a vocational expert's testimony and the DOT necessarily requires reversal"); <u>Justin v. Massanari</u>, 20 Fed. Appx. 158, 160 (4th Cir. 2001) (unpublished) (interpreting SSR 00-4p to require the judge to address only evident discrepancies, not to uncover such discrepancies); <u>Cobbs v. Barnhart</u>, No. Civ. A. 03-2203-GTV, 2004 WL 2218387, at *8 (D. Kan. Sept. 28, 2004) (refusing to find reversible error where the judge failed to inquire about conflicts between the testimony of the vocational expert and the DOT).

Even if SSR 00-4p places an affirmative duty on the judge, such a procedural requirement would not necessarily bestow upon a plaintiff the right of automatic remand where that duty was unmet.  Such an automatic right on a purely technical ground where there is otherwise substantial evidence to support the SSA's findings of fact would be contrary to the deference due the SSA.  <u>See</u> 42 U.S.C. § 405(g).

Brown's contention that reversal is required because the judge failed to resolve actual conflicts between the expert's description of the requirements of the occupations Brown could perform and the corresponding requirements for those occupations

listed in the DOT fails here.  Of the three occupations the
expert mentioned in her testimony, the requirements of "office
helper" and "assembler, small products," as listed in the DOT,
exceed the capabilities the judge determined that Brown could
perform.  According to the DOT, "office helper" and "assembler,
small products," both require Level 2 Reasoning, which entails
the ability to carry out detailed but uninvolved written or oral
instructions.  (See Brown's Mem. Supp. Reversal at 7-8; Brown's
Mem. Supp. Reversal, Ex. B ("DOT - office helper") at 21; Brown's
Mem. Supp. Reversal, Ex. C ("DOT - assembler, small prods.") at
25-26.)  However, the judge specifically limited Brown's
capabilities to jobs that did not require more than the
performance of "simple, unskilled tasks," which corresponds to
Level 1 Reasoning in the DOT.  (AR at 352; Brown's Mem. Supp.
Reversal, Ex. D ("DOT Glossary") at 30.)  The expert's testimony,
therefore, conflicted with the DOT with regard to the jobs of
"office helper," and "assembler, small products" and no
explanation was offered to resolve this conflict.  However, as is
explained above, the "housekeeping cleaner" job mentioned by the
expert is entirely consistent with an entry in the DOT.  When an
expert testifies that a claimant can perform multiple jobs and at
least one of those jobs does not conflict with the DOT and exists
in significant numbers in the national economy, a decision by the
SSA based on the expert's testimony is supported by substantial

- 17 -

evidence.  See Rutherford v. Barnhart, 399 F.3d at 557-58

(holding the SSA's decision was based on substantial evidence

where inconsistencies were not present for all of the occupations

the vocational epxert listed); Jones v. Barnhart, 364 F.3d 501,

505-06 (3d Cir. 2004) (affirming decision of the SSA where some,

but not all, of the occupations listed by the vocational expert

were in conflict with the DOT); Gray v. Barnhart, No. 04-207-B-W,

2005 WL 1923523, at *8 (D. Me. Aug. 9, 2005) ("Because one of the

jobs listed by the administrative law judge has not been shown to

be outside the physical and mental limitations found by him to

exist, the plaintiff is not entitled to remand pursuant to his

DOT-based arguments."); Prunty, 2005 WL 1926611, at *5 (finding

substantial evidence where the SSA withdrew its position that

claimant could perform one job testified to by the vocational

expert that conflicted with the DOT, and no conflict existed

between the remaining job and the DOT).  Since one of the three

jobs described by the vocational expert is consistent with the

DOT and exists in significant numbers in the national economy, no

failure by the administrative law judge to ask if a conflict

existed warrants a reversal.

    C.  Subjective complaints of pain

    SSA regulations establish a two-step analysis for evaluating

a claimant's symptoms, including pain.  20 C.F.R. §§ 404.1529,

416.929; Social Security Ruling (SSR) 96-7p, Evaluation of

Symptoms in Disability Claims: Assessing the Credibility of an
Individual's Statements, 61 Fed. Reg. 34,483-01 (July 2, 1996)
("SSR 96-7p"); see also Butler v. Barnhart, 353 F.3d 992, 1004
(D.C. Cir. 2004).  First, the claimant must show, citing "medical
signs and laboratory findings," the existence of "a medically
determinable impairment . . . which could reasonably be expected
to produce the pain or other symptoms alleged."  20 C.F.R.
§§ 404.1529(b), 416.929(b).  This finding "does not involve a
determination as to the intensity, persistence, or functionally
limiting effects of [the] symptoms."  Id.  Then, the judge must
evaluate the intensity and persistence of the claimant's pain
along with the extent to which the symptoms or pain limit the
claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1),
416.929(c)(1).  In making this determination, the judge considers
"all of the available evidence, including [the claimant's]
medical history, the medical signs and laboratory findings, and
statements from [the claimant], [the claimant's] treating or
examining physician or psychologist, or other persons[.]"  Id.
If there appears to be a conflict between the claimant's
testimony and the information on the record, the judge "must make
a finding on the [claimant's] credibility," in order to determine
the degree to which the claimant's pain interferes with her
ability to perform basic work functions.  SSR 96-7p; see also

Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); Butler, 353 F.3d at 1004-05.

The primary purpose of the two-step analysis is to ensure that the judge does not discredit Brown's subjective complaints of pain arbitrarily.  See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (stating that the judge's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain").  A judge dismisses a claimant's complaints arbitrarily when he does so "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the pain."  Id. at 641.  A judge dismisses a claimant's complaints on permissible grounds when there are specific findings on credibility supported by evidence on the record.  Butler, 353 F.3d at 1005.

In this case, the administrative law judge's decision stated in part:

> The claimant's complaints of pain and alleged symptoms are not very credible. . . .  The extensive medical examination performed by Dr. Maximous (Exhibit 4F) and the treatment notes of Enid Cruise, D.C. (Exhibit 15F), do not reveal any objective medical evidence or findings that would substantiate the intensity and limiting effects of the claimant's alleged back pain and symptoms.

(Brown's Mem. Supp. Reversal 9; AR at 22.)  Brown argues that this passage indicates that the judge failed to make a

- 20 -

"determination whether [Brown] had made the threshold showing by objective evidence of the existence of a medical impairment[,]" and "instead found that [she] had failed to establish by objective evidence the amount and degree of her subjective complaints."  (Brown's Mem. Supp. Reversal 9-10.)

This contention is not supported by the record.  The judge, in conformity with the first step of the two-step analysis, did make a finding that Brown had a medically determinable impairment or combination of impairments that was severe.  (AR at 20, 26.) Moreover, the judge conducted a thorough subsequent step two analysis of the intensity and persistence of Brown's pain.  In addition to evaluating Brown's testimony and that of her friend, the judge evaluated all of the medical evidence in the record, as 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) require.  The record also exposes conflicts between Brown's complaints and the medical evidence.

For example, after acknowledging Brown's stated history of depression, the judge noted that during a visit to Dr. Scarcella, Brown told the doctor she did not need to see a psychiatrist. (AR at 22.)  In addition, the judge acknowledged Brown's complaints that she could not "stand, sit, or walk for any length of time."  (AR at 22.)  In evaluating this testimony, the judge gave weight to Dr. Maximous's medical report because he is a "treating specialist and his report is well supported by

medically acceptable clinical and laboratory diagnostic techniques." (AR at 23.) The judge noted that Dr. Maximous's report indicated that Brown "is able to still do grocery shopping, take her children to the playground, swimming pool, and library, and prepare meals and do laundry." (AR at 23.)

In addition to detailing the evidence he relied on, the judge also explained the evidence he disregarded. (AR at 23.) He noted that the testimony of Mitchell Brooks, a friend of Brown's for fifteen years, failed to provide any useful information regarding the severity of Brown's symptoms. (AR at 23.) The judge did not accord significant weight to several emergency room reports because they contained "only conclusionary medical opinions not supported by treatment notes or objective findings." (AR at 23.) He rejected a Department of Labor Status Report dated October 9, 1995 submitted by Brown for similar reasons. (AR at 23.)

The administrative law judge properly assessed Brown's credibility based on specific findings supported by the record, and his conclusions about Brown's subjective claims are supported by substantial evidence.

## CONCLUSION

The SSA's determination that Brown was not disabled is supported by substantial evidence. The administrative law judge properly relied on the testimony of the vocational expert,

- 22 -

notwithstanding the requirements of SSR 00-4p, because there was no conflict between one occupation listed by the expert that existed in significant numbers in the national economy and an entry in the DOT.  Further, the judge properly evaluated Brown's subjective complaints because he conducted a thorough assessment in light of the entire record.  Because the SSA's determination was based on substantial evidence, Brown's motion for reversal will be denied and the SSA's motion for affirmance will be granted.  A final Order accompanies this Memorandum Opinion.

SIGNED this 12th day of January, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge